# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00215-CV

**Larry H. Lugo, Appellant**

**v.**

**Fidel Herrera, Mary Herrera and All Occupants, Appellees**

## FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY, NO. C-1-CV-07-010872, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this landlord tenant dispute, appellant Larry Lugo appeals from the take nothing judgment entered by the trial court after trial to the bench. Lugo asserts that there was error in the trial court's judgment because the evidence was sufficient to establish grounds for eviction and monetary damages due to nonpayment of rent. Lugo also asserts that the trial court erred in failing to award attorney's fees for the trial and appeal. Because we find no error in the trial court's judgment, we affirm.

## BACKGROUND

Claiming ownership of the single-family home located at 3210 Kay Street in Austin, Texas, Lugo filed a forcible detainer suit in Justice Court, Precinct One, Travis County, Texas, to evict his mother-in-law and father-in-law, appellees Fidel and Mary Herrera, and all other occupants. On September 27, 2007, the Honorable Richard E. Scott signed a final judgment awarding

possession of the property to Lugo. The Herreras appealed this judgment, and the matter was tried *de novo* in the County Court of Law No. 1 before the Honorable J. David Phillips.

During the trial before the county court at law, four witnesses testified—Larry Lugo, Fidel and Mary Herrera,[1] and Bill Warren, Lugo's attorney. Lugo testified that he had obtained the house from the Herreras in 1984 because Mr. Herrera had tax problems and needed to borrow some money. Lugo testified that he borrowed $20,000 to give to Mr. Herrera to pay his taxes and that he received the house in exchange for this loan. The record demonstrates that the house was used as collateral for the $20,000 note that Lugo obtained from Chase Bank.

Lugo also testified that he deeded the house to John Herrera, Mr. and Mrs. Herrera's son, in 1990 to hide the property from creditors, but that it was not a "real transaction" because John never paid him any money for the house. The record demonstrates that John Herrera died in 1991 approximately six months after he received the house from Lugo. Lugo testified that, two weeks prior to his death, John Herrera signed a will conveying the house to Lugo's son Levi. Lugo further testified that Levi deeded the house to Lugo in 2004, but that Lugo did not actually pay Levi anything for the house.

Lugo agreed that the Herreras had been living in the house since they purchased it and that the Herreras had purchased the house long before Lugo had met them. Lugo testified that the Herreras had been paying him between $110 and $240 a month for rent for several years. Mr. and Mrs. Herrera testified that they had been paying these amounts to Lugo but that these payments were made to cover the property taxes and insurance and not for rent.

---

[1] The Herreras testified as adverse witnesses.

*The Lease*

Lugo testified that he approached the Herreras in 2006 to sign a lease agreement. Under the terms of the lease agreement, the Herreras were to pay $800 per month. Lugo testified that he needed the lease to give to a bank for another financial transaction. He also testified that the Herreras never paid him more than $240 a month and that he never contacted them to ask them to pay more rent until he initiated legal proceedings against them in 2007. Lugo testified that he knew that the Herreras were both in their seventies, received social security, and probably could not afford to pay $800 a month in rent.

In contrast to Lugo's testimony, Mr. Herrera testified that he signed the lease agreement but that he did not understand what he signed because he could not read very well. Mrs. Herrera testified that she signed the lease because Lugo needed it for "business purposes" and that Lugo told her she would not really have to pay $800 a month. Mrs. Herrera testified that the lease was dated February of 2006, but that she did not sign it until February of 2007. Mrs. Herrera testified that she never paid Lugo more than $240 a month.

*The Trial Court's Ruling*

After hearing the testimony of the four witnesses, the trial court determined that there was no valid lease agreement and that Lugo failed to demonstrate a landlord-tenant relationship. The trial court entered judgment awarding possession of the house to the Herreras. The trial court's judgment denied Lugo's claims for attorney's fees and taxed all costs of court to Lugo. This appeal followed.

**ANALYSIS**

Lugo raises three issues on appeal. In his first and second issues, Lugo challenges the sufficiency of the evidence arguing that there was sufficient evidence to establish grounds for eviction and monetary damages due to nonpayment of rent. In his third issue, Lugo argues that the trial court erred in failing to award his attorney's fees.

*Legal and Factual Sufficiency*

We construe Lugo's first and second issues to challenge the legal and factual sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the judgment being reviewed. *Id.* at 827-28. In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985) (citing *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)).

The record belies Lugo's claims that he entered a lease agreement with the Herreras and that, under the terms of the lease, the Herreras were to pay him $800 a month. Although Lugo testified at trial that he entered into a two-year lease agreement with the Herreras in February 2006 and, under the terms of the lease, the Herreras were to pay him $800 per month in rent, Lugo testified

4

that the Herreras never paid him more than $240 per month. On cross-examination, Lugo admitted that he never asked the Herreras to pay him more than $240 per month until he initiated the eviction proceedings below. Lugo also admitted that he needed the lease agreement to provide to a bank for purposes of another financial transaction. In addition to Lugo's testimony, Mrs. Herrera testified that Lugo came to her in February 2007, not February 2006, and asked her to sign a lease agreement. She testified that Lugo told her, "Don't worry about it. This is just for my end of business—business purposes." She also testified that Lugo told her that "we were not going to be paying no $800." Mrs. Herrera further testified that Lugo never asked her to pay more than $240 a month until she received the letter from the attorney initiating the instant proceedings.

Based on the record before us, we conclude that the evidence was sufficient to allow reasonable and fair-minded people to reach the judgment reached by the trial court that there was no lease agreement between Lugo and the Herreras, that Lugo was not entitled to recover on his forcible entry and detainer claims or his claims for unpaid rent, and that the Herreras were entitled to possession of the house. *See City of Keller*, 168 S.W.3d at 827-27. We therefore hold that the evidence was legally sufficient to support the trial court's judgment.

In addition, after weighing all of the evidence in the record, we cannot say that the trial court's judgment is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We therefore hold that the evidence was factually sufficient to support the trial court's judgment.

We overrule Lugo's first and second issues.

5

*Attorney's Fees*

In his third issue, Lugo challenges the trial court's failure to award him attorney's fees. We review the trial court's decision to award attorney's fees for abuse of discretion. *See Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 262 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.). A trial court abuses its discretion if it acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To determine whether the trial court abused its discretion, we consider whether the trial court's action was arbitrary or unreasonable. *Id*. at 242.

Having concluded the evidence was legally and factually sufficient to support the trial court's judgment, we likewise conclude there was no abuse of discretion in the trial court's failure to award attorney's fees to Lugo. Lugo has not established a contractual agreement that provides for the award of attorney's fees to him in these circumstances. Nor was Lugo a prevailing plaintiff in the underlying trial. In the absence of a contractual agreement, Texas law generally allows only a prevailing plaintiff to recover attorney's fees. *See In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 695 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001-.002 (West 2008)). Moreover, to the extent Lugo asserts that he was entitled to recover attorney's fees under section 24.006 of the property code, *see* Tex. Prop. Code Ann. § 24.006 (West 2000), Lugo ignores subsection 24.006(b), which states that if a landlord provides the notice required under subsection 24.006(a), or if a written lease entitles the landlord to recover attorney's fees, "a *prevailing* landlord is entitled to recover reasonable attorney's fees from the tenant." *See id.*

§ 24.006(b) (emphasis added).  Therefore, we find no abuse of discretion in the trial court's failure to award attorney's fees to Lugo.  *Id.*  We overrule Lugo's third issue.

## CONCLUSION

Finding no error in the trial court's judgment, we affirm.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   November 7, 2008